Filed 11/19/25  P. v. Whitehead CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C102033 |
| v. | (Super. Ct. No. 08F03645) |
| DAVID WHITEHEAD, | |
| Defendant and Appellant. | |

David Whitehead, Anthony Medina and Brandon Morton participated in an attempted robbery during which Morton shot and killed Jason Fletcher.  In 2011, a jury found Whitehead guilty of first degree murder and attempted robbery, but acquitted him of attempted carjacking.  The jury found true allegations that the murder was committed while Whitehead was engaged in the commission of attempted robbery, and that Whitehead personally used a firearm in the commission of the crimes.  It found not true an allegation that the murder was committed while Whitehead was engaged in an attempted carjacking.

1

This court affirmed the judgment with certain modifications not relevant here. (*People v. Medina* (2016) 245 Cal.App.4th 778, 793 (*Medina*).)  In a partially published opinion, this court rejected Whitehead's contention that insufficient evidence supported the jury's finding that he was a major participant in the attempted robbery who acted with reckless indifference to human life.  (*Id.* at 787, 791-793.)

In 2019, Whitehead filed a petition for resentencing under Penal Code section 1172.6.[1]  The trial court conducted a section 1172.6, subdivision (d) hearing and denied Whitehead's petition.

Whitehead now contends (1) the trial court made factual findings inconsistent with the jury verdicts, (2) insufficient evidence supports the trial court's finding that Whitehead was a major participant in an attempted robbery who acted with reckless indifference to human life, and (3) the trial court failed to properly consider Whitehead's youth at the time of the offenses.

We conclude (1) the trial court's finding that Whitehead was a major participant in the attempted robbery was not inconsistent with the jury verdicts, (2) the trial court's finding is supported by sufficient evidence, and (3) the trial court considered Whitehead's youth in deciding whether he acted with reckless indifference to human life.

We will affirm the trial court's order.

BACKGROUND

Medina, Morton and Whitehead were friends.  Whitehead was 18 years old at the time of the offenses.  On May 1 or 2, 2008, Medina fired a gun at another car. Morton and Whitehead were in the car Medina was driving at the time of the shooting. Morton admitted he also had a gun.

---

[1]  Undesignated statutory references are to the Penal Code.

Miguel Ramos and Angelo Granados were in the other car. At trial, Medina admitted he shot at the other car four or five times, but claimed he did it because he was afraid for his life. Ramos was shot in the knee and Granados was shot in the thigh.

Days later, Morton, who was a drug dealer, arranged for his girlfriend Holly Sarmento to buy half an ounce of methamphetamine from Sarmento's friend Jennifer Cauble, another drug dealer. Morton subsequently complained the methamphetamine Cauble had provided was short. He was angry and asked to meet with Cauble. Cauble agreed to a meeting, but told Morton her boyfriend Jason Fletcher would drive her to the meeting and they would bring a friend.

Morton asked Medina to go to the meeting. He intended to get additional methamphetamine or his money back. He admitted telling Medina someone with Cauble may have a gun. Medina also sold drugs and knew selling drugs was dangerous. He intended to make sure Morton got his money back and nothing happened to Morton.

The meeting took place on a residential street at about 12:30 a.m. on May 5, 2008. Sarmento and Morton arrived in Sarmento's parents' car. Whitehead had asked if he could also go to the meeting, and he arrived with Medina in Medina's car. Cauble, Fletcher, and Fletcher's friend Marty Rainville arrived in another vehicle.

Morton moved to Fletcher's car. According to Cauble, Morton argued with Rainville about whether Rainville had a gun, then Morton showed Cauble on a scale that the methamphetamine she gave him was short, and Cauble offered to help resolve the problem. Cauble testified she then noticed Medina and another man approaching Fletcher's car. Sarmento and Medina's testimony established the other man was Whitehead.

According to Morton, things got heated after Rainville displayed the handle of a gun or knife and kept fidgeting with his jacket, Cauble claimed the methamphetamine Morton brought was different than what she had given Sarmento, and Fletcher made

3

racist statements, acted high, and said "I stay with mine" when Morton asked whether he had a weapon.

Morton admitted pulling out a gun and ordering everyone to get out of Fletcher's car as Medina and Whitehead walked up. Cauble testified that Morton, Medina and Whitehead had guns, and Morton ordered the group to get out of the car and leave the car keys.

Sarmento saw Whitehead point a gun at Cauble and order Cauble to get out of the car. Medina testified that after Morton pulled out a gun, Whitehead pointed a gun at Rainville. According to Morton, the fact that Whitehead had a gun helped him control Fletcher and Rainville.

Morton, Medina and Whitehead walked Fletcher and Rainville across the street at gunpoint. But Morton then told Whitehead to get Sarmento out of there.

Medina testified that Whitehead joined Sarmento in Sarmento's parents' car. Morton testified his plan was to take the methamphetamine, which was worth between $700 and $900, and to leave. He ordered Cauble to get his methamphetamine out of Fletcher's car. But according to Cauble, Morton tried and failed to start Fletcher's car, became angry, walked toward Fletcher, pointed a gun at him, fired two shots, and ran away. Cauble did not see any physical confrontation between Fletcher and Morton before the shooting. Morton testified, however, that Fletcher grabbed Morton's sweatshirt, the two "tussled," Morton was concerned Fletcher was grabbing for a gun, and Morton shot Fletcher twice.

When Whitehead joined Sarmento in her parents' car, he started to drive away. Sarmento heard two gunshots when the car had traveled the distance of about two car lengths. Whitehead made a U-turn after the gunshots.

Medina heard gunshots as he was attempting to make a three-point turn in his car. Seconds later, Morton got in the backseat of Medina's car and Medina drove off.

4

Sarmento saw Medina's car driving toward her parents' car. Whitehead flipped the car around again, and the two cars left the area.

Fletcher died from the gunshot wounds. A knife was found in the pocket of Rainville's jacket. No gun or knife was found in Fletcher's clothing or car.

Medina, Morton and Whitehead were charged with murder, attempted robbery, and attempted carjacking. The trial court instructed the jury on aiding and abetting, murder with malice aforethought, felony murder, special circumstance allegations, and the personal use of a firearm allegation.

The jury found Whitehead guilty of first degree murder (§ 187, subd. (a) – count one) and attempted robbery (§§ 664, 211 – count two). It acquitted Whitehead of attempted carjacking. (§§ 664, 215 – count three.) It found true allegations that the murder was committed while Whitehead was engaged in an attempted robbery (§ 190.2, subd. (a)(18)), and that Whitehead personally used a firearm in the commission of the murder and attempted robbery (§ 12022.53, subd. (b)). It found not true the allegation that the murder was committed while Whitehead was engaged in an attempted carjacking.

The trial court sentenced Whitehead to life without the possibility of parole on the count one murder conviction, plus 10 years on the section 12022.53 personal use of a firearm enhancement. It stated that the term was stayed on the count two attempted robbery conviction.

This court affirmed the judgment, with modifications not relevant here. (*People v. Medina* (Feb. 11, 2015, C069965) [nonpub. opn.].) The California Supreme Court granted Whitehead's petition for review and eventually transferred the matter back to this court for reconsideration in light of *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*). This court again affirmed the judgment with modifications. (*Medina, supra*, 245 Cal.App.4th at p. 793.) In a partially published opinion, this court rejected Whitehead's contention that insufficient evidence supported the jury's finding that he

was a major participant in the attempted robbery who acted with reckless indifference to human life. (*Id.* at pp. 787, 791-793.)

The California Supreme Court denied a second petition for review and this court issued a remittitur. The trial court then amended Whitehead's sentence as follows: life without the possibility of parole on the count one murder conviction; two years imposed but stayed on the count two attempted robbery conviction; and 10 years imposed but stayed on the section 12022.53 personal use of a firearm enhancement. The United States Supreme Court denied Whitehead's petition for writ of certiorari.

On February 27, 2019, Whitehead filed a petition for resentencing under section 1170.95 (now section 1172.6). The trial court denied the petition, ruling that Whitehead failed to establish a prima facie case for relief under the statute. This court affirmed the trial court's order. (*People v. Whitehead* (Dec. 6, 2021, C093261) [nonpub. opn.].)

The California Supreme Court granted Whitehead's petition for review and subsequently transferred the matter back to this court with directions to reconsider the cause in light of *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*). On reconsideration, this court reversed the trial court's order and remanded for further proceedings. (*People v. Whitehead* (Dec. 30, 2022, C093261) [nonpub. opn.].)

The trial court heard the matter on June 14, 2024, and denied the petition. It found that the prosecution had proven beyond a reasonable doubt all of the elements of murder under a theory of first degree felony murder as a major participant with reckless indifference to human life.

Regarding whether Whitehead was a major participant, the trial court made the following findings. Morton and Medina's testimony about the lack of a plan or the intent to commit a robbery were not credible. Although there was no evidence Whitehead was involved in planning the robbery, when he found out about it, he asked to go and participated fully as an armed backup. Whitehead pulled out his gun and pointed it at

6

Cauble to remove her from the car. He actively assisted Morton in trying to steal Fletcher's car. He joined Morton in walking Fletcher and Rainville across the street at gunpoint and detained them so that Morton could try to steal the car. When Whitehead left the scene, Morton was visibly angry at Fletcher, holding him at gunpoint. Whitehead immediately returned to the scene after the gunshots but did nothing to aid Fletcher.

As for reckless indifference to human life, the trial court found the following. Whitehead was aware of the danger inherent in drug transactions because Morton's former girlfriend died in a drug deal gone bad one month before the current offenses. All three defendants were armed for the May 5, 2008 meeting. Whitehead knew Morton and Medina were capable of using lethal force because he was present when Medina shot at another vehicle days earlier. In that incident, Medina and Morton discussed the availability of a gun for use. Whitehead went to the May 5 meeting with a gun and used it at Morton's direction to aid in the attempted robbery by holding those inside Fletcher's car at bay during Morton's confrontation with them. Whitehead exacerbated the potential for violence by immediately pulling his gun out, pointing it at Cauble, and removing her from Fletcher's car.

The trial court ruled that Whitehead did not present evidence on the impact of his youthfulness in relation to the issue of reckless disregard. It said this was not a situation in which " 'a youthful offender was swept up in circumstances beyond his or her control that led to unintended death.' " Rather, Whitehead sold drugs with Medina and Morton and was aware of the dangers associated with drug dealing. Days before Fletcher's killing, Medina shot at another vehicle, injuring two people. Whitehead was aware of the willingness of his associates to use lethal force, but asked to join the May 5 meeting. He willingly joined Medina and Morton in a planned confrontation over a drug dispute in which he and his associates were armed with a firearm.

7

I

Whitehead contends the trial court made factual findings inconsistent with the jury verdicts. Specifically, Whitehead claims that although the jury acquitted him of attempted carjacking and found not true the allegation that the murder was committed while Whitehead was engaged in an attempted carjacking, the trial court nevertheless found that he "was guilty of carjacking and the carjacking-murder special circumstance." (Italics omitted.) Having reviewed the trial court's order, we conclude the trial court's finding that Whitehead was a major participant in the attempted robbery was not inconsistent with the jury verdicts.

The trial court's order never stated that Whitehead was guilty of carjacking or attempted carjacking or that the murder was committed while Whitehead was engaged in an attempted carjacking. Nor did it state that Whitehead was a major participant in an attempted carjacking. Instead, in finding Whitehead to be a major participant, the trial court explained: "Although there was no evidence that [Whitehead] was involved in planning the *attempted robbery*, when he found out about it, he asked to go and participated fully as armed backup." (Italics added.) The trial court added: "When [Whitehead] and Medina arrived at the scene, [Whitehead] was the first out of the car and immediately pulled out his gun, and subsequently pointed it at Cauble to remove her from the car to the sidewalk." In its discussion of reckless indifference, the trial court stated that Whitehead "arrived with a gun on his person and used it at Morton's direction to aid in the *attempted robbery* by holding those inside Fletcher's vehicle at bay during Morton's confrontation with Fletcher." (Italics added.) It is true the trial court twice mentioned that Morton tried to steal Fletcher's car, and stated that Whitehead assisted Morton, but the trial court did not describe Morton's effort as attempted carjacking or suggest Whitehead was guilty of such a crime or special circumstance allegation. The evidence indicates the methamphetamine was in Fletcher's car. Morton decided to take

8

the methamphetamine and directed Cauble to remove it from Fletcher's car. Cauble said Morton tried to take the car. Either way, the jury found that Whitehead committed an attempted robbery, not an attempted carjacking. The trial court found that in addition to asking to go to the confrontation, bringing a gun to the scene, participating as an armed backup, pointing the gun at Cauble, and holding the occupants of Fletcher's car at bay, Whitehead also moved Fletcher and Rainville across the street at gunpoint, complied with Morton's direction to take Sarmento away, returned to the scene when he heard gunshots, but then fled with his associates and did nothing to aid the victim.

The trial court found that Whitehead was a major participant in the attempted robbery. That finding of major participation was not inconsistent with the jury verdicts.

## II

Whitehead next contends there is insufficient evidence to support the trial court's finding that Whitehead was a major participant in an attempted robbery who acted with reckless indifference to human life.

The prosecutor relied on the felony-murder theory at the 2011 trial. Senate Bill No. 1437 (2017-2018 Reg. Sess.) significantly narrowed the scope of the felony-murder rule effective January 1, 2019, by adding subdivision (e) to section 189 so that "[a] participant in the perpetration or attempted perpetration of a felony listed in [section 189,] subdivision (a)[, including attempted robbery,] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in [section 190.2, subdivision (d), the statute defining the felony-murder special circumstance]." (§ 189, subd. (e); see *id.* at subd. (a); *People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).)

9

Senate Bill No. 1437 created a procedure for those convicted of felony murder to vacate their murder conviction and be resentenced on the remaining counts based on changes to the law of murder effected by the legislation. (§ 1172.6, subd. (d)(3); *Curiel, supra*, 15 Cal.5th at pp. 449-450.) Under that section 1172.6 procedure, a trial court must hold a hearing to determine whether the petitioner is entitled to relief under Senate Bill No. 1437 after an order to show cause is issued. (§ 1172.6, subd. (d)(1).) As the trial court here acknowledged, the People must prove beyond a reasonable doubt that the petitioner is guilty of murder under California law as amended by Senate Bill No. 1437. (§ 1172.6, subd. (d)(3).)

The felony-murder theory at issue in this case is the one involving a major participant in an underlying felony who acted with reckless indifference to human life. Senate Bill No. 1437 codified the understanding of "major participant" and "reckless indifference" as elucidated in *Banks, supra*, 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). (*Strong, supra*, 13 Cal.5th at p. 710.) Under *Banks*, the following are relevant to the major participant element: " 'What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?' [Citation.] . . . [N]one of these considerations is dispositive. Rather, '[a]ll may be weighed in determining the ultimate question, whether the defendant's participation "in criminal activities known to carry a grave risk of death" [citation] was sufficiently significant to be considered "major" [citations].' " (*Strong,* at pp. 705-706.)

10

"[R]eckless indifference encompasses both subjective and objective elements. [Citation.] 'As to the subjective element, "[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed," and he or she must consciously disregard "the significant risk of death his or her actions create." ' [Citations.] 'As to the objective element, " '[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.' " ' [Citation.] [¶] 'The degree of risk to human life is crucial to the analysis.' " (*People v. Emanuel* (2025) 17 Cal.5th 867, 884 (*Emanuel*).) Under *Clark*, we consider the following in determining whether a defendant acted with reckless indifference: " 'use of or awareness of the presence of a weapon or weapons, physical presence at the scene and opportunity to restrain confederates or aid victims, the duration of the crime, knowledge of any threat the confederates might represent, and efforts taken to minimize risks.' " (*Emanuel,* at pp. 884-885.) We look at the totality of the circumstances to determine whether a defendant acted with reckless indifference. (*Id.* at p. 885.)

We review the denial of Whitehead's section 1172.6 petition, following an evidentiary hearing, for substantial evidence. (*Emanuel, supra*, 17 Cal.5th at p. 885.) Under that standard, " 'we review the record " ' "in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact" ' " ' could find beyond a reasonable doubt that" Whitehead was a major participant in the attempted robbery who acted with reckless indifference to human life. (*Ibid*.)

We conclude substantial evidence supports the trial court's finding that Whitehead was a major participant in an attempted robbery who acted with reckless indifference to human life. The evidence presented at trial established that Whitehead knew of his associates' propensity for violence because he was present when Medina shot at a car

11

days earlier and during that incident, Morton was also armed and said he was going to "get" the people in the car Medina shot at. Morton testified he carried a gun whenever he dealt drugs and that Medina and Whitehead also had guns. Whitehead knew that drug transactions were dangerous because he was involved in selling drugs. Although he did not plan the May 5 confrontation, he asked to participate in it. As a "best friend" of Morton, Whitehead was arguably in a position to urge a de-escalation of Morton's planned robbery, but Whitehead did not do so. Instead, Whitehead brought a gun to the confrontation. When Whitehead arrived at the scene, he pulled his gun as he approached Fletcher's car and pointed it at one or more occupants of the car. Morton also had a gun, which was pointed at Fletcher. Morton told Whitehead that Rainville had a gun. A significant risk of death was apparent in the armed confrontation, yet Whitehead helped Morton control Fletcher and Rainville. Whitehead forced Fletcher and Rainville across the street at gunpoint, then complied with Morton's direction to protect Sarmento. Whitehead returned toward the location of the shooting after hearing gunshots, but then fled with his associates and did not render aid to the victim.

The trial court's finding is supported by sufficient evidence.

III

In addition, Whitehead contends the trial court failed to properly consider his youth at the time of the offenses.

A defendant's youth is a relevant factor in determining whether he or she acted with reckless indifference to human life. (*Emanuel, supra*, 17 Cal.5th at p. 885, fn. 6; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 990-991.) Whitehead was 18 at the time of the shooting. But unlike in *Ramirez*, there was no evidence Whitehead succumbed to peer pressure or that immaturity affected his ability to understand the grave risk of death posed by the armed confrontation over a drug deal gone bad. (*Ramirez,* at p. 991.) The trial court considered defendant's youth and found that this was not a situation in which " 'a youthful offender was swept up in circumstances beyond his or her control that led

12

to unintended death.' " As the trial court found, Whitehead engaged in drug dealing. He knew of his associates' propensity for violence and willingly joined them in an armed confrontation over a drug deal. Whitehead does not demonstrate that the trial court failed to properly consider his youth.

## DISPOSITION

The trial court's order denying the petition for resentencing is affirmed.


          /S/
MAURO, J.


We concur:


     /S/
ROBIE, Acting P. J.


     /S/
KRAUSE, J.


13